ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| INMOTION LLC<br><br>Recurrido<br><br>v.<br><br>EAGLE TRADING LLC Y OTROS<br><br>Peticionarios | KLCE202401010 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm.: BY2024CV01584<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 28 de octubre de 2024.

Comparece ante nos, el codemandado y peticionario, Sr. Genaro Mojica Ávila (señor Mojica Ávila), mediante un recurso de *Certiorari*. Solicita la revocación de la *Resolución* emitida el 2 de agosto de 2024, notificada el día 5 siguiente, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). Por virtud del aludido pronunciamiento, el TPI declaró *No Ha Lugar* el escrito intitulado *Moción de Desestimación a tenor con la Regla 10.2 de Procedimiento Civil* instada por el compareciente.

Por los fundamentos expresados a continuación, en esta etapa de los procedimientos, acordamos denegar la expedición del auto de *certiorari.*

**I.**

La presente causa se inició el 19 de marzo de 2024, ocasión en que la parte demandante y recurrida, Inmotion, LLC (Inmotion) presentó una *Demanda* en contra de Eagle Trading, LLC (Eagle Trading), el señor Mojica Ávila, su cónyuge denominada como Jane Doe, la Sociedad Legal de Bienes Gananciales por ambos conformada, así como contra otras personas jurídicas y compañías

aseguradoras nombradas con nombres desconocidos.[1] En esencia, el demandante alegó que se dedicaba a la reventa autorizada de *Software as a Services* (SaaS) de la nube Salesforce, Inc., entre otros, tanto en Puerto Rico como en el Caribe. En lo pertinente a la controversia ante nuestra consideración, el 28 de julio de 2021, Inmotion planteó que envió una propuesta de uso y acceso para varias licencias al señor Mojica Ávila, por sí y en representación de Eagle Trading. La propuesta totalizaba $54,768.16, pagaderos por anticipado trimestralmente por un periodo de 27 meses; es decir, nueve pagos parciales de $6,085.34.[2] El 28 de julio de 2021 el codemandado Mojica Ávila inicialó, firmó y remitió al demandante la propuesta debidamente suscrita y aceptada.

Inmotion sostuvo que la parte demandada sólo realizó cinco pagos,[3] por lo que remitió varias facturas e infructuosamente gestionó a través de diferentes medios el cobro de su alegada acreencia.[4] Según sus propios dichos, Inmotion continuó ofreciendo acceso del servicio pactado a la parte demandada hasta el mes de diciembre de 2022. En su reclamación, el demandante aseveró que la parte demandada hizo caso omiso a sus actos de cobranza. En respuesta, el 7 de julio de 2023, Inmotion envió una reclamación extrajudicial por la suma de $24,341.36.[5] Dirigió la misiva al señor Mojica Ávila, como Representante de Eagle Trading, y al Sr. Fernando Velázquez Velázquez en calidad de Agente Residente de la corporación codemandada. Inmotion afirmó, a su vez, que continuó ofreciéndole acceso a la parte demandada al uso de las licencias hasta el mes de diciembre de 2022.[6]

---

[1] Apéndice, págs. 10-61.
[2] Véase, Apéndice, págs. 38-44; 46. La suma de los nueve pagos parciales totaliza $54,768.06.
[3] Véase, Apéndice, pág. 45.
[4] Véase, Apéndice, págs. 47-56.
[5] Véase, Apéndice, págs. 57-61.
[6] Véase, Apéndice, pág. 16, acápite 42.

Añadió la parte demandante que el impago de la parte demandada le ha causado daños, toda vez que debido al incumplimiento de contrato por parte de los codemandados, Salesforce activó la cláusula de aceleración y solicitó el pago total del acuerdo de uso de las licencias. Por consiguiente, Inmotion tuvo que pagar a Salesforce el licenciamiento objeto del contrato con Eagle Trading. Así, pues, en retribución, Inmotion reclamó la deuda de $24,341.36; $25,000.00 por los perjuicios ocasionados y honorarios de abogado.

Así las cosas, el 8 de julio de 2024, el señor Mojica Ávila incoó una *Moción de Desestimación a tenor con la Regla 10.2 de Procedimiento Civil*.[7] El codemandado reconoció que inicialó, firmó y remitió al demandante la cotización aceptada y firmada por el total de $54,768.16. No obstante, planteó que el documento constituía un típico contrato de adhesión, del cual no surgía que estuviera contratando en su carácter personal ni que se comprometiese solidariamente con Eagle Trading a responder por la alegada deuda reclamada. El señor Mojica Ávila sostuvo también que la reclamación judicial carecía de alegaciones plausibles en su contra, ya que la mera alegación del referido "por sí" no era suficiente para rebasar el principio de responsabilidad limitada que es consustancial con la ficción corporativa. Agregó el codemandado que la figura excepcional de la solidaridad contractual opera únicamente cuando se pacta expresamente. En fin, el señor Mojica Ávila razonó que Inmotion contrató con Eagle Trading, por lo que no se justificaba la concesión de remedio alguno por su parte y, en consecuencia, procedía la desestimación.

Inmotion se opuso el 29 de julio de 2024.[8] Expresó que, en cumplimiento de las normas procesales, en la *Demanda* alegó de

---

[7] Apéndice, págs. 63-71.
[8] Apéndice, págs. 72-77.

manera sucinta y sencilla los hechos demostrativos a la concesión de los remedios solicitados. Resumió: "[L]a parte demandante y la parte demandada suscribieron un contrato por la cantidad de $54,768.16 para el uso de licencias y accesos de un producto Salesforce para el manejo de la relación con los clientes. El acuerdo no fue cumplido por la parte demanda en un acto unilateral de incumplimiento de contrato mediando mala fe y que dichas acciones promueven una injusticia para la parte demandante que ha tenido que responder frente a terceros. El codemandado Genaro Mojica Ávila hizo representaciones por sí y en nombre de Eagle Trading, LLC [...]".[9] Inmotion argumentó que el señor Mojica Ávila respondía en su carácter personal por incumplir con su deber de fiducia y citó varias de sus alegaciones en la *Demanda* que implican al codemandado.

Ponderados los argumentos de las partes, mediante una *Resolución* notificada el 5 de agosto de 2024, el TPI declaró *no ha lugar* la petición desestimatoria promovida por el señor Mojica Ávila.[10] Expresó: "A tenor con la Regla 10.2 de Procedimiento Civil, las alegaciones son suficientes en esta etapa de los procedimientos; y deben ser objeto del descubrimiento de prueba correspondiente".[11] A su vez, apercibió al codemandado de contestar la *Demanda* en un término perentorio de veinte días. Posteriormente, el 21 de agosto de 2024, el TPI reiteró su determinación,[12] esta vez en ocasión de la *Moción de Reconsideración*[13] interpuesta infructuosamente por el señor Mojica Ávila el 20 de agosto de 2024.

Inconforme aún, el 19 de septiembre de 2024, el codemandado acudió ante esta curia y esbozó el siguiente señalamiento de error:

---

[9] Véase, pág. 74.
[10] Apéndice, págs. 1-2.
[11] Véase, pág. 2.
[12] Apéndice, pág. 9
[13] Apéndice, págs. 3-8.

ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL [TRIBUNAL DE PRIMERA INSTANCIA] AL DENEGAR LA SOLICITUD DE DESESTIMACIÓN TODA VEZ QUE QUEDÓ DEMOSTRADO QUE EL RECURRDIO NO PRESENTÓ ALEGACIONES SUFICIENTES PARA UNA CAUSA DE ACCIÓN EN COBRO DE DINERO NI DAÑOS CONTRA GENARO MOJICA EN CARÁCTER PERSONAL.

El 7 de octubre de 2024, Inmotion presentó *Oposición a Auto de Certiorari.* Con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

**II.**

**A.**

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones judiciales de un foro inferior y corregir algún error cometido por éste. *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al., v. BBVAPR,* 185 DPR 307, 337-338 (2012); *García v. Padró,* 165 DPR 324, 334 (2005). A diferencia de la apelación, el foro revisor tiene la facultad para expedir o denegar el recurso de *certiorari* de manera discrecional. *García v. Padró, supra.* El Tribunal Supremo de Puerto Rico ha definido *discreción* como el "poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *Id.*, que cita a *Pueblo v. Ortega Santiago,* 125 DPR 203, 211 (1990). Por ende, la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera…" *Pueblo v. Sánchez González,* 90 DPR 197, 200 (1964), citado con aprobación en *García v. Padró, supra*, págs. 334-335.

No obstante, el ejercicio de la discreción no equivale a hacer abstracción del resto del Derecho, ya que ese proceder constituiría, en sí mismo, un abuso de discreción. *Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001). Por lo tanto, el examen al auto discrecional que realizamos antes de decidir el curso a seguir no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra,*

pág. 176. Ello así, porque "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". *García v. Padró, supra,* pág. 335; *Pueblo v. Ortega Santiago, supra.*

Es sabido que la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias en las cuales este foro intermedio tiene autoridad para atender los recursos de *certiorari*. En su parte pertinente, la norma dispone como sigue:

> .    .    .    .    .    .    .    .
>
> El **recurso de *certiorari*** para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, **solamente será expedido por el Tribunal de Apelaciones cuando se recurra** de una resolución u orden bajo las Reglas 56 y 57 o **de la denegatoria de una moción de carácter dispositivo**.
>
> .    .    .    .    .    .    .    .
>
> **Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión**. (Énfasis nuestro).
>
> .    .    .    .    .    .    .    .

Además del examen objetivo antes descrito, para ejercer sabia y prudentemente nuestra facultad discrecional al determinar si expedimos o denegamos un recurso de *certiorari*, nos guiamos por la Regla 40 del Reglamento del Tribunal de Apelaciones, *Criterios para la expedición del auto de certiorari*, 4 LPRA Ap. XXII-B, R. 40. Así reza:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Claro está, **es norma asentada que este tribunal intermedio no interviene con las determinaciones emitidas por el foro primario ni sustituye su criterio discrecional**, "*salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto*". (Cursivas en el original). *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018), que cita con aprobación a *Ramos Milano v. Wal-Mart*, 168 DPR 112, 121 (2006); *Rivera y otros v. Banco Popular*, 152 DPR 140, 155 (2000); *Meléndez Vega v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

**B.**

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, permite que el demandado solicite la desestimación de la demanda, antes de presentar una contestación. Las razones para solicitar la desestimación son las siguientes: (1) falta de jurisdicción sobre la materia, (2) falta de jurisdicción sobre la persona, (3) insuficiencia del emplazamiento, (4) insuficiencia del diligenciamiento del emplazamiento, (5) **dejar de exponer una reclamación que justifique la concesión de un remedio** y (6) dejar de acumular una parte indispensable. *Costas Elena y otros v. Magic Sport y otros,* 2024 TSPR 13, 213 DPR ___ (2024); *González Méndez v. Acción Soc.,* 196 DPR 213, 234 (2016).

El Tribunal Supremo de Puerto Rico ratificó en *Costas Elena y otros v. Magic Sport y otros, supra,* las normas que rigen la

desestimación de una demanda basada en el inciso 5 de la Regla 10.2, *supra.* Estas normas son las siguientes:

(1) La desestimación procede cuando de las alegaciones de la demanda, surge que **alguna de las defensas afirmativas derrotara la pretensión del demandante**.

(2) Al evaluar una moción de desestimación al amparo de la Regla 10.2 (5), *supra,* **el tribunal tiene que tomar como ciertos todos los hechos bien alegados en la demanda, aseverados de manera clara y concluyente y que de su faz no dan margen a dudas**.

(3) Los tribunales que atienden una moción basada en la Regla 10.5, *supra,* tienen que **evaluar las alegaciones de la demanda conjuntamente, y de la forma más favorable para el demandante**.

(4) **Toda duda debe resolverse a favor del demandante**.

(5) **El demandado tiene que establecer con toda certeza que el demandante no tiene derecho a remedio alguno**, bajo cualquiera estado de Derecho que se pudiera probar en apoyo a su reclamación. (Énfasis nuestro). Véase, además, *Eagle Security v. Efron Dorado et al,* 211 DPR 70, 84 (2023).

La privación de un litigante de su día en corte sólo procede en casos extremos. Ahora bien, la desestimación al amparo de la Regla 10.2(5), *supra,* prosperará si luego de realizar el análisis requerido, el tribunal entiende que no se cumple con el estándar de plausibilidad. Los tribunales no pueden dar paso a una demanda insuficiente bajo el pretexto de que las alegaciones conclusivas podrán ser probadas con el descubrimiento de prueba. *Costas Elena y otros v. Magic Sport y otros, supra.*

**III.**

En la causa del título, el peticionario alega que el recurrido se equivoca en torno a que la responsabilidad de una deuda dineraria corporativa se extiende a sus directores. A esos fines, establece que la reclamación de Inmotion no logró derrotar el principio de responsabilidad limitada, que cobija a la figura de una corporación, como lo es Eagle Trading. Amparado en el derecho

corporativo y al negar la existencia de una obligación solidaria, el señor Mojica Ávila sostiene que el recurrido adolece de una causa justificada que le haga acreedor de algún remedio.

Por su parte, el recurrido aduce que la moción de reconsideración instada por el señor Mojica Ávila no interrumpió el término para acudir ante este foro revisor al entender que incumplió con la norma procesal atinente. En los méritos, arguye que la *Demanda* comprende alegaciones suficientes y plausibles para retener al peticionario en el pleito. Asimismo, plantea que el TPI no abusó de su discreción al emitir el dictamen impugnado, ya que "no cierra la puerta a una posible desestimación futura"[14] en caso de que Inmotion no pruebe sus alegaciones.

Según reseñamos, en el presente caso, el señor Mojica Ávila presentó una solicitud de desestimación, la cual fue evaluada y denegada. Sin embargo, somos del criterio que el peticionario no demostró que el TPI haya errado en su determinación, al justipreciar que, al palio de la Regla 10.2 de Procedimiento Civil, *supra*, las alegaciones del recurrido contra el peticionario, en su carácter personal, eran suficientes en esta etapa de los procedimientos.

A la luz del marco jurídico antes expuesto, resolvemos que no se han producido las circunstancias que exijan nuestra intervención a esta altura del litigio. No empece a que la Regla 52.1 de Procedimiento Civil, *supra*, nos faculta a revisar una determinación del foro de instancia sobre la denegatoria de una moción de carácter dispositivo, al amparo de los criterios que guían nuestra discreción concurrimos en no intervenir en la determinación impugnada.

En suma, no vemos que, en el amplio y riguroso análisis realizado a las posturas de los litigantes, el TPI haya incurrido en abuso de discreción o actuado bajo prejuicio o parcialidad. Tampoco

---

[14] Véase, *Oposición a Auto de Certiorari*, pág. 7.

el peticionario nos ha persuadido de que el TPI se haya equivocado en la interpretación o aplicación de la norma procesal; ni surge de su petición que, el abstenernos de interferir en la determinación recurrida en esta etapa de los procesos, se evitaría un perjuicio sustancial contra el peticionario o un fracaso irremediable de la justicia, de manera que estemos compelidos a ejercer nuestra función revisora. Ciertamente, opinamos que no se justifica fraccionar ni dilatar los procedimientos en este momento, cuando es evidente que el peticionario podrá presentar sus argumentos nuevamente durante otras etapas del litigio. Igualmente, debemos favorecer la robusta política judicial a favor de que los casos se ventilen en sus méritos y que no se prive a una parte de su día en corte.[15] Ante estas circunstancias, procede que nos abstengamos de expedir el auto solicitado y que se continúen los procedimientos del caso sin mayor dilación en el tribunal primario.

**IV.**

Por los fundamentos antes expuestos, denegamos la expedición del recurso de *certiorari*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[15] Véase, *VS PR, LLC v. Drift-Wind,* 207 DPR 253, 264 (2021); *Cirino González v. Adm. Corrección et al.,* 190 DPR 14, 49 (2014); *Banco Popular v. SLG Negrón,* 164 DPR 855, 864 (2005); *Valentín v. Mun. de Añasco,* 145 DPR 887, 897 (1998).